STATE OF NORTH CAROLINA, EX REL. COMMISSIONER OF INSURANCE v. NORTH CAROLINA FIRE INSURANCE RATING BUREAU

No. 7510INS581

(Filed 5 May 1976)

1. Insurance § 116— fire insurance rates — necessity for public hearing

G.S. 58-27.2(a) and the rules and regulations adopted by the N. C. Insurance Advisory Board pursuant to the statutory authority granted it by G.S. 58-27.1(c) required the Commissioner of Insurance, before acting upon a proposal for a 19% reduction in extended coverage and windstorm insurance premium rates filed with him by the Fire Insurance Rating Bureau, to hold a public hearing on such proposal, after the publishing of notice thereof to the public, and in accordance with such rules and regulations.

2. Insurance § 116— fire insurance rates — "deemer" provisions — necessity for public hearing

Insofar as the G.S. 58-27.2(a) requirement for a public hearing on a proposal to revise fire insurance rates may be repugnant to the "deemer provisions" of G.S. 58-131.1, the statutory provisions mandating a public hearing must prevail since those provisions were last enacted.

3. Insurance § 116— fire insurance rate filing — withdrawal by Rating Bureau

The N. C. Fire Insurance Rating Bureau may, in its discretion, withdraw a rate filing at any time prior to the setting of a public hearing thereon when, because of delay in setting the hearing, the data upon which a filing was made has become obsolete.

4. Insurance § 116— fire insurance rates — authority to investigate absent rate filing — necessity for notice and hearing

Any rate order made by the Insurance Commissioner pursuant to the authority of G.S. 58-131.2 "to investigate at any time the necessity for a reduction or increase in rates" may be made only after giving the Rating Bureau and insurers who may be affected thereby reasonable notice and hearing if hearing is requested. G.S. 58-131.5.

Judge MARTIN dissents.

APPEAL by respondent, The North Carolina Fire Insurance Rating Bureau, from orders issued by the Commissioner of Insurance on 11 April 1975, 28 April 1975, and 30 April 1975. Heard in the Court of Appeals 21 October 1975.

This rate-making proceeding was instituted on 6 January 1975 by a filing with the Commissioner of Insurance by the North Carolina Fire Insurance Rating Bureau seeking a 19% reduction in extended coverage and windstorm insurance premium rates.

The questions presented by this appeal, however, are placed in clearer perspective when viewed against the background of certain related prior proceedings.

By letter dated 8 January 1973 the Rating Bureau made a filing with the Commissioner of Insurance seeking revisions in extended coverage and windstorm rates indicating an overall reduction of 23.3%, coupled with a uniform $100.00 deductible applicable to all extended coverage perils. This filing was based on review of experience for the years 1964-1970 inclusive. By letter dated 7 March 1973 addressed to the Manager of the Rating Bureau, the Commissioner replied as follows:

"This has reference to your filing dated January 8, 1973.

It is not possible to schedule a public hearing at this time due to my very busy schedule. Therefore, I am requesting that you waive the deemer provisions of General Statute 58-131.1.

A public hearing will be set as soon as my schedule permits.

Yours very truly,
s/ JOHN RANDOLPH INGRAM
Commissioner of Insurance"

(The statutory provision referred to in Commissioner Ingram's letter as the "deemer provisions" is contained in the last sentence of G.S. 58-131.1, which is as follows:

"Every rating method, schedule, classification, underwriting rule, bylaw or regulation submitted to the Commissioner for approval shall be deemed approved, if not disapproved by him in writing within 60 days after submission.")

By letter dated 9 March 1973 the Manager of the Rating Bureau responded as follows:

"Dear Commissioner Ingram:

Review of Experience-Extended Coverage
1964-1970 Inclusive

In accordance with your request of March 7, 1973, this Bureau waives the deemer provisions of General Statute 58-131.1.

We request, however, that the public hearing will be set as soon as practicable."

No public hearing was set. On 22 June 1973 the Governing Board of the Rating Bureau withdrew the filing made 8 January 1973 and notified the Commissioner that upon completion of review of more recent experience data which had become available, a new filing would be made.

On 21 September 1973 a new filing was made based on review of experience for the years 1965-1971 inclusive and indicating an overall reduction of 22.6%. By letter dated 20 November 1973 the Commissioner requested waiver of the provisions of G.S. 58-131.1 with respect to the 21 September 1973 filing, again stating that due to his very busy schedule it was not possible to schedule a public hearing at that time and stating that a public hearing would be set as soon as his schedule permitted. In accordance with the Commissioner's request, the Rating Bureau by letter dated 27 November 1973 waived the provisions of G.S. 58-131.1 with respect to the 21 September 1973 filing and requested that the public hearing be set as soon as practicable. No public hearing was set. On 31 May 1974 the Governing Board of the Rating Bureau withdrew the filing made 21 September 1973 and notified the Commissioner that a new filing would be made upon completion of review of more recent experience data.

On 6 January 1975 the Rating Bureau made the filing which led to the events giving rise to the present appeal. This filing was based on experience for the six years 1968-1973 inclusive and indicated a 19% reduction in rates without provision for any additional deductible. By letter dated 5 March

1975, addressed to the Manager of the Rating Bureau, the Commissioner replied as follows:

"This has reference to your filing dated January 6, 1975 proposing revised rates for Extended Coverage.

It is not possible to schedule a public hearing on this filing at this time and you are requested to waive the deemer provisions of General Statute 58-131.1.

Yours very truly,
JOHN RANDOLPH INGRAM
Commissioner of Insurance
s/R. E. Holcombe
Fire & Casualty Actuary"

This letter from the Commissioner dated 5 March 1975 was received by the Rating Bureau on 7 March 1975 and crossed in the mail the following letter, dated 6 March 1975, from the Manager of the Rating Bureau to the Commissioner:

"Dear Commissioner Ingram

Review of Experience — Extended Coverage
1968-1973 Inclusive

Pursuant to action of the Governing Board of this Bureau, the captioned filing is hereby withdrawn.

This action was taken on the advise of the General Counsel of the Bureau for the primary purpose of avoiding possible controversy at this time about the effect of the operation of the deemer provision of the Statute (G.S. 58-131.1) or about the effect of a waiver by the Bureau.

Yours very truly,
s/ C. B. AYCOCK
Manager"

When the Commissioner's letter of 5 March 1975, which requested the Rating Bureau to waive the "deemer provisions" of G.S. 58-131.1 with respect to the filing dated 6 January 1975, was received in the office of the Rating Bureau on 7 March 1975, the Manager of the Bureau responded to the Commissioner by letter dated 7 March 1975 which referred the Commissioner to the Manager's previous letter, dated 6 March 1975, withdrawing the filing. No further filing was made by

the Rating Bureau relating to premium rates for extended coverage and windstorm insurance.

By letter dated 11 April 1975 the Commissioner of Insurance wrote to the Manager of the Rating Bureau as follows:

"This has reference to your submission of January 6, 1975 with attached statistical exhibits.

Pursuant to authority conferred under General Statute 58-131.2 the reduction of 19% set forth in your filing is hereby approved. An additional decrease of 3.4% as determined by the attached rate development exhibit is also hereby approved.

You are directed to implement these reductions effective May 1, 1975.

Yours very truly,
s/JOHN RANDOLPH INGRAM
Commissioner of Insurance"

Attached to this letter was a table labeled "Development of Indicated Rate Level Change."

On 22 April 1975 the North Carolina Fire Insurance Rating Bureau filed a motion with the Commissioner of Insurance to set aside his order as contained in his letter dated 11 April 1975, stating as grounds for the motion that:

(1) The filing to which the 11 April 1975 order referred was not then before the Commissioner for consideration, having been withdrawn by the Bureau by its letter to the Commissioner dated 6 March 1975.

(2) The 11 April 1975 order was entered without prior notice to the Bureau and without opportunity afforded the Bureau or any other persons to be heard with respect thereto.

(3) No findings of fact or conclusions of law were made to support the 11 April 1975 order.

(4) No public hearing had been held in North Carolina on the subject of fair rates for extended coverage insurance for more than two years, and the public interest would best be served by a full public hearing based on a revised and updated filing on extended coverage rates which the

Rating Bureau was preparing and which it expected to file within thirty days.

On 28 April 1975 a hearing was held before the Commissioner on the Rating Bureau's motion to set aside his 11 April 1975 order. At the conclusion of the hearing on 28 April 1975 the Commissioner orally announced that insofar as the 19% reduction was concerned, it was his order that the reduction go into effect with an effective date of 1 May 1975, and he set 12 May 1975 as the date to hear the Rating Bureau on the further reduction of 3.4%.

On 30 April 1975 the Commissioner signed a written "Supplemental Order to Letter Order of April 11, 1975." In this he "affirmed" that portion of his letter order dated 11 April 1975 which ordered a reduction of 19% in extended coverage insurance rates, and stayed the portion of his letter order of 11 April 1975 which ordered an additional reduction of 3.4%, pending a hearing on the additional reduction to be held on 12 May 1975.

On 30 April 1975 the North Carolina Fire Insurance Rating Bureau filed exceptions and notice of appeal from the Commissioner's letter order dated 11 April 1975 and from his oral order entered at the conclusion of the 28 April 1975 hearing which denied the motion to set aside the 11 April 1975 order. Also on 30 April 1975, after the Rating Bureau received a copy of the Commissioner's written "Supplemental Order" of that date, the Rating Bureau filed a supplemental notice of appeal and exceptions.

*Attorney General Edmisten by Assistant Attorney General Isham B. Hudson, Jr. for John Randolph Ingram, Commissioner of Insurance.*

*William T. Joyner and J. E. Tucker for North Carolina Fire Insurance Rating Bureau, Appellant.*

PARKER, Judge.

Chapter 1079 of the 1949 Session Laws, which was ratified and became effective on 21 April 1949, was entitled "An Act to amend Chapter 58 of the General Statutes of North Carolina to provide for the holding of public hearings on rate filings." Section 1, subsection (2) of that act enacted into law a new section

of the General Statutes, G.S. 58-27.2, subsection (a) of which
provides as follows:

> "G.S. 58-27.2(a)—Whenever any statutory or licensed in-
> surance rating bureau or any insurance company making
> its own rate filings makes any proposal to revise an exist-
> ing rating schedule, the effect of which is to increase or
> decrease the charge for insurance, or to set up a new rating
> schedule, and such rating schedules are subject to the
> approval of the Commissioner, such bureau or company
> shall file its proposed change and supporting data with
> the Commissioner who shall thereafter, before acting upon
> any such proposal, order a public hearing thereon, if such
> hearing is required by the rules and regulations adopted by
> the insurance advisory board and in accordance therewith,
> and fix a time and place for such hearing not earlier than
> 20 days thereafter. The bureau or the company making such
> proposal shall, not more than 10 days prior to the time of
> such public hearing cause to be published in a daily news-
> paper or newspapers published in North Carolina, and in
> accordance with the rules and regulations of the insurance
> advisory board, a notice, in the form and content approved
> by the Commissioner, setting forth the nature and effect
> of such proposal and the time and place of the public hear-
> ing to be held."

Subsection (b) of G.S. 58-27.2 expressly makes the provisions
of that statute "applicable to all rating bureaus operating in
North Carolina."

Ch. 1079 of the 1949 Session Laws also amended G.S.
58-27.1 by adding thereto subsection (c), which provides as fol-
lows:

> "G.S. 58-27.1(c) The insurance advisory board shall, within
> three months of the ratification of this subsection promul-
> gate rules and regulations to provide for the holding of pub-
> lic hearings before the Commissioner of Insurance, or any
> person employed by the Insurance Department authorized
> by the Commissioner to act in his stead, on such proposals,
> to revise an existing rating schedule the effect of which
> is to increase or decrease the charge for insurance or to
> set up a new rating schedule, as are subject to the approval
> of the Commissioner and as, in the judgment of the board,
> are of such nature and importance as to justify and require

a public hearing. The board shall have authority to determine by such rules and regulations the circumstances under which such public hearings shall be held and the Commissioner of Insurance shall hold public hearings in accordance with such rules and regulations. From time to time the board may revise and change its promulgated rules and regulations in such manner as, in its judgment, the public interest may require."

Acting pursuant to the authority granted to it by G.S. 58-27.1(c), the North Carolina Insurance Advisory Board adopted, and on 1 March 1950 filed with the Secretary of State, rules and regulations providing for the holding of public hearings before the Commissioner of Insurance on proposals to revise insurance rates. Insofar as pertinent to the questions raised on this appeal, these rules and regulations provide as follows:

"Pursuant to the provisions of the aforementioned act and to afford all citizens and interested persons as full an opportunity as possible to be heard in all cases where substantial rights of the public are involved in such matters, and without undue delay on minor rate adjustments or classification changes, the following rules are adopted:

1. Any rate adjustment or proposal involving a general revision of an existing rating schedule which the Commissioner or the Advisory Board finds upon investigation involves a material change in the rate level, or the setting up of a new rating schedule of a material nature for a kind of insurance or for a separately rated major subdivision thereof, shall be subject to a public hearing prior to action thereon by the Insurance Commissioner. Any proposal involving only a change or changes in specific items of an existing rating schedule shall not be subject to a public hearing unless the Insurance Commissioner, upon review, decides that a public hearing is justified and required by the nature and importance of the proposed change or changes and is in the public interest.

\*   \*   \*

3. Public hearings herein provided for shall be conducted by the Commissioner of Insurance or, in his discretion, by any reasonable person employed and duly authorized to act in his stead.

4. The time and place of any public hearing shall be determined by the Commissioner, who shall give due regard to the convenience of all interested parties. In no event shall a public hearing be scheduled prior to twenty days after submission of a rate filing.

5. Publication of notice of any public hearing shall be made by the bureau or company which is the proponent of the rate filing. The notice shall set forth the nature and effect of the proposal and the time and place of the public hearing to be held. The notice shall be published in one or more daily newspapers published in this State not more than ten days prior to the time set for the hearing. The Commissioner shall approve the form and content of such notice. Notice regarding hearings where there is no bureau or company proponent shall be given by the Insurance Commissioner.

\*   \*   \*

8. The hearing shall be open to the public and any interested person or persons may appear and be heard, either in person or by a representative, and produce oral or written evidence relevant and material to the subject matter.

\*   \*   \*

10. At all such hearings the proponent of the rate adjustment shall be accorded the opportunity to offer evidence in rebuttal.

\*   \*   \*

13. Subsequent to a public hearing on a filing made with the Insurance Department, immediate consideration shall be given to all the information available. Announcement of the Commissioner's decision shall be made public as soon after the hearing as is feasible but in no event before any approved bulletins, rate schedules or amendments to schedules or manuals shall be placed in the mail to agents and companies affected, in order that the Commissioner's decision shall be put into effect. The effective date shall be the date specified in the bulletins, rate schedules or amendments to schedules or manuals, mailed to the agents and companies."

[1, 2] Thus, G.S. 58-27.2(a) and the rules and regulations adopted by the North Carolina Insurance Advisory Board pur-

suant to the statutory authority granted it by G.S. 58-27.1(c) clearly and explicitly required the Commissioner of Insurance, *before* acting upon the proposal for a 19% reduction in extended coverage and windstorm insurance premium rates filed with him by the Fire Insurance Rating Bureau on 6 January 1975, to hold a public hearing on such proposal, after the publishing of notice thereof to the public, and in accordance with such rules and regulations. Insofar as this statutory requirement for a public hearing may be repugnant to what the parties have in their correspondence sometimes referred to as the "deemer provisions" of G.S. 58-131.1, the provisions of G.S. 58-27.2(a) mandating the public hearing must prevail. When two statutes are in conflict and cannot reasonably be reconciled, the statute last enacted repeals the earlier statute to the extent of the repugnancy, even absent a specific repealing clause. *Commissioners v. Commissioners,* 186 N.C. 202, 119 S.E. 206 (1923). As above noted, G.S. 58-27.2(a) was enacted in 1949, while G.S. 58-131.1 was enacted in 1945. Therefore, whatever the legal effect of a "waiver" by the Fire Insurance Rating Bureau of the "deemer" provisions of G.S. 58-131.1 may be, it is clear that neither the Rating Bureau nor the Insurance Commissioner may lawfully dispense with the public hearing in cases in which a public hearing is mandated by G.S. 58-27.2(a). Moreover, the busy schedule of the Commissioner does not justify failure to comply with the statute's mandate. We note that G.S. 58-27.1(c) and the rules adopted by the Insurance Advisory Board pursuant thereto permit the public hearing to be held either before the Commissioner or before "any person employed by the Insurance Department authorized by the Commissioner to act in his stead."

In the present case no hearing has been held on the rate filing made by the Rating Bureau on 6 January 1975. The only hearing of any nature held in connection with that filing was the hearing before the Insurance Commissioner held on 28 April 1975, and that hearing was held solely to consider the Rating Bureau's motion to set aside the Commissioner's ex parte letter ruling of 11 April 1975. At no time was any notice of hearing published as is required by G.S. 58-27.2(a) and by paragraph Number 5 of the above cited rules of the Insurance Advisory Board. By entering the orders here appealed from without first conducting the public hearing mandated by the statute the Insurance Commissioner exceeded his authority. *Comr. of Insurance v. Automobile Rate Office,* 29 N.C. App. 182, 223 S.E. 2d

512 (filed 7 April 1976) ; *Comr. of Insurance v. Rating Bureau,* 28 N.C. App. 409, 221 S.E. 2d 96 (1976).

[3]   For an additional reason the orders appealed from must be reversed. When those orders were entered, the rate filing on which they purportedly were based had already been withdrawn by the Rating Bureau which filed them. We find nothing in Article 13 of Chapter 58 of the General Statutes, under which the North Carolina Fire Insurance Rating Bureau was created, which deals with the right of the Rating Bureau to withdraw a filing once made. We see no sound reason, however, why this may not be done, at least if done prior to the time a public hearing on the filing has been set. Certainly it is desirable that any rate filing be based upon the most current data available. As noted by our Supreme Court, "[w]hile the statute requires that a hearing by the Commissioner upon a filing by the Bureau be held promptly, it is well within the bounds of possibility that, between the filing and the hearing, experience may be had which would be most relevant to the determination of the direction of a projection of the present 'loss trend' into the future." *In re Filing by Fire Ins. Rating Bureau,* 275 N.C. 15, 37, 165 S.E. 2d 207, 222 (1969). That case held that evidence of such more recent experience is admissible at the hearing. Even so, when because of delay in setting the hearing the data upon which a filing was made becomes obsolete, orderly procedure may call for the withdrawal of the old filing and the making of a new one based upon more recently available information. Accordingly, we hold that in such cases the Rating Bureau may, in its discretion, withdraw a filing if this is done prior to the setting of a public hearing thereon.

[4]   It should be noted that this holding recognizing the right of the Rating Bureau to withdraw a filing in no way limits the authority of the Insurance Commissioner to carry out his statutory duty to achieve insurance premium rates "as will produce a fair and reasonable profit only." G.S. 58-131.2 gives the Commissioner power, even without any filing by the Rating Bureau, "to investigate at any time the necessity for a reduction or increase in rates." Any order made by the Commissioner pursuant to that authority, however, may be made only after giving the Rating Bureau and insurers who may be affected thereby reasonable notice and hearing if hearing is requested. G.S. 58-131.5.

We find it unnecessary to pass upon appellant's contention that in entering the orders appealed from the Commissioner

violated appellant's constitutional rights. The statutes above cited make adequate provision for protecting appellant's due process rights to notice and hearing. It is only necessary that the Commissioner comply with the mandates of the statutes.

For the reasons noted, the orders appealed from are

Vacated.

Judge MORRIS concurs.

Judge MARTIN dissents.