STATE OF NORTH CAROLINA EX REL. COMMISSIONER OF INSUR-
ANCE v. NORTH CAROLINA FIRE INSURANCE RATING
BUREAU

No. 7610INS120

(Filed 1 September 1976)

1. Insurance § 116— fire insurance rate filing — notice of public hearing
— stay of deemer provision

   The Commissioner of Insurance is not required to give notice, con-
duct a hearing and make his ruling on a fire insurance rate filing
within 60 days from the date of the filing in order to avoid the
"deemer provision" of G.S. 58-131.1; if the Commissioner, within 60
days of the filing, gives notice of a public hearing on the filing, the
"deemer provision" is stayed pending the hearing and his ruling.

2. Insurance § 116— homeowners insurance rates — denial of increase —
order contrary to law and evidence — increase in effect pending fur-
ther order

   Order of the Commissioner of Insurance denying an increase in
homeowners insurance rates was contrary to law and the evidence,
was unreasonable and arbitrary, and must be vacated; and although
the Fire Insurance Rating Bureau had no authority to effect a 16.2%
rate increase under the "deemer provision" of G.S. 58-131.1, the Court
of Appeals in the exercise of its inherent power has allowed such
increase to remain in effect until the Commissioner of Insurance
performs his statutory duty in further proceedings and fixes premium
rates for homeowners insurance which will produce a fair and reason-
able profit and no more where the Rating Bureau presented a prima
facie case supporting its filing and offered competent evidence that
the previous rates were unfair and confiscatory, and where the record
on appeal discloses persistent procrastination, unfairness, and partisan
procedures and decisions on the part of the Commissioner.

   Judge VAUGHN concurring in part.

   Judge MARTIN concurs in the result.

APPEAL by defendant from Order of North Carolina Com-
missioner of Insurance entered 6 November 1975. Heard in the
Court of Appeals 13 May 1976.

This rate-making proceeding began with the filing on 27
June 1975 by the North Carolina Fire Insurance Rating Bureau
with the Commissioner of Insurance for a 16.2% increase in
homeowners insurance rates.

To provide background and trace the history of homeowners
insurance filings made by the Rating Bureau since January
1973, when Commissioner of Insurance John Randolph Ingram

assumed the duties of his office, the record on appeal disclosed the following:

1. On 8 January 1973, there was a homeowners filing substantially similar to the one now involved requesting a net increase in rates. There was an amendment to the filing on 26 January 1973.

2. On 7 March 1973, the Commissioner wrote requesting waiver of the deemer provision and said " . . . a public hearing will be set as soon as my schedule permits."

3. On 9 March 1973, there was a letter from Mr. Aycock to the Commissioner waiving the deemer provision and requesting "that the public hearing be set as soon as practicable."

4. On 22 June 1973, the Bureau withdrew its filing for updating.

5. On 9 April 1974, there was a new homeowners filing requesting a 20% overall increase.

6. On 23 May 1974, the Bureau received from the Commissioner a letter requesting waiver of the deemer provision.

7. On 24 May 1974, the Bureau wrote to the Commissioner waiving the deemer provision.

8. On 24 January 1975, the Bureau wrote to the Commissioner withdrawing the filing of 9 April 1974.

9. On 10 February 1975, the Bureau wrote to the Commissioner making a filing very similar to the filing involved here and making a request for an overall increase of 16.2%.

10. On 12 February 1975, the Bureau received an acknowledgment that the filing had been received and would be reviewed.

11. On 8 April 1975, the Bureau received a letter from the Commissioner requesting waiver of the deemer provision.

12. On 10 April 1975, the Bureau wrote to the Commissioner as follows:

> "Pursuant to action of the Governing Board of this Bureau, the captioned filing dated February 10, 1975, is hereby withdrawn.

This action was taken on the advice of the general counsel of the Bureau for the primary purpose of avoiding possible controversy at this time about the effect of the operation of the deemer provision of the Statute (G.S. 58-131.1) or about the effect of a waiver by the Bureau."

13. The Commissioner offered the testimony of the Deputy Commissioner of the Fire and Casualty Division, which tended to show that the Commissioner had conducted a "public hearing" on a filing relating to extended coverage insurance. In fact on 11 April 1975, the Commissioner issued a Letter Order to the Bureau in connection with a pending filing relating to extended coverage insurance. On the 30th day of April, 1975, the Commissioner issued in that same matter of extended coverage a paper headed "Supplemental Order to Letter Order of April 11, 1975" in which he purported to act after what he contended was a "hearing." This Court held that the Order of the Commissioner be vacated for failure to comply with the notice and hearing provisions of G.S. 58-27.2(a). *Comr. of Insurance v. Rating Bureau*, 29 N.C. App. 237, 224 S.E. 2d 223 (1976).

The filing involved in this hearing by the Rating Bureau on 27 June 1975 contained the following:

Section A—Summary of Revisions

Sectoin B—Material to be Implemented

Section C—Supporting Experience

Section D—Explanatory Material

Section E—Form HO-4 Self Rating Filing Supplement

Section F—Relativities by Amount of Insurance and Form.

The filing proposed a change in deductibles and in premium income which would forecast a prospective rate increase in homeowners insurance equivalent to 16.2%. In an accompanying letter the Rating Bureau advised it was not authorized to waive the deemer provisions of G.S. 58-131.1.

On the 21st day of August 1975, the Commissioner gave the Bureau notice of a public hearing on the proposed revisions. A Notice of Public Hearing, approved by the Commissioner of Insurance, was published, reciting that the hearing would be

held on October 29 " . . . for the purpose of investigating the adequacy and fairness of existing rates of Homeowners Insurance Policies."

On 3 October 1975, the Bureau wrote to the Commissioner advising of the implementation by the Bureau of the recommended rates not disapproved within 60 days under the deemer clause.

By letter dated 6 October 1975, the Commissioner protested the activation of the deemer provision.

On 8 October 1975, the Rating Bureau effected the 16.2% rate increase.

The hearing was held on 29 October and concluded on the following day. When the hearing was called counsel for the Rating Bureau requested that the record show that "it's the position of the Bureau that the investigation being made as advertised, is an investigation of rates which have been deemed approved." Thereupon, counsel for the Department of Insursurance announced that the staff maintains "that the deemer clause has not taken effect," and then called as a witness R. E. Holcombe "to testify to the general procedure that has been followed for some thirty years in this area."

The witness Holcombe testified that during his nineteen years as a member of the staff of the Department of Insurance the scheduling of a rate hearing has always acted as a stay until the rate request is heard and either approved or disapproved. On cross-examination it was elicited that since 5 January 1973 there had been ten to twelve substantial rate filings by the Rating Bureau, and that only one hearing for a minor farm owners filing had been held and this hearing was not completed.

Carole J. Banfield testified that she was employed as associate actuary and manager of Personal Lines Actuarial Services Division of Insurance Services Office in New York City, and that the matters in this filing were prepared by her or under her supervision. She further testified that since the homeowners insurance program was introduced in North Carolina in 1960 there has been a 4% rate increase, none since 1966; that the average fire loss between 1969 and 1973 has increased 27.2%; that the cost of residential construction has increased 70% since 1968; that in Raleigh wages of bricklayers from

April 1968 to January 1975 increased 57.6%, carpenters 77.1%, electricians 56.6%, painters 53.8%, plasterers 57.1%, plumbers 49.4%, and building laborers 102.6%; that property crime (theft and burglary) in North Carolina increased 137% from 1969 to 1973; that the loss experience of the major writers in North Carolina shows the industry lost 6.2 million dollars in 1974 from homeowners insurance; that in the first six months of 1975, the major companies writing 50% of the homeowners insurance have lost 17% in this State for homeowners insurance; and that the loss trend projected to 15 September 1975 indicates a needed increase of 29.2% instead of the 16.2% requested in this filing.

Charles B. Aycock, Rating Bureau Manager, testified as to various filings made by the Bureau since January 1973. He was cross-examined by the Commissioner as to whether he or members of the Governing Board appeared before the General Assembly in the 1973 Session in opposition to the Commissioner's reinsurance plan and how many insurance companies opposed the plan.

An insurance agent from Kinston testified in support of the filing. An agent from Manteo testified that the rate increase was justified throughout the State except for the Outer Banks.

On 6 November 1975, the Commissioner entered an order. Upon finding so-called facts which consisted primarily that the Rating Bureau filing was based on data which was "unsupported" or "were not collected under the approved statistical plan for ratemaking" and upon making so-called conclusions of law that the Commissioner had not approved or deemed approved the filing, that the revised rates applied on 8 October 1975 by the Bureau were illegal, and that the filing was improper, unreasonable and not in the public interest, he ordered:

"1. That the filing submitted June 27, 1975 is hereby disapproved.

2. That the rates in effect as of June 27, 1975, continue in effect.

3. That premiums illegally collected after October 8, 1975 in excess of the rate in effect on June 27, 1975 shall be promptly refunded."

The Rating Bureau filed exception and gave notice of appeal.

*Attorney General Edmisten by Assistant Attorney General Isham B. Hudson, Jr., for plaintiff appellee.*

*Joyner & Howison by William T. Joyner, Henry S. Manning, Jr., and James E. Tucker for defendant appellant.*

CLARK, Judge.

The Fire Insurance Rating Bureau was established in 1945. Its jurisdiction, powers and duties are defined in G.S. 58-125 through 58-131.9. Every insurance company authorized to insure against loss by fire, lightning, windstorm, etc., is required to become a member of the Bureau and to file annually its underwriting experience in the State.

We first consider the validity of the Rating Bureau's application of the deemer provision (G.S. 58-131.1) in effecting the 16.2% increase in homeowner rates as filed.

G.S. 58-131.1 provides as follows:

> *"Approval of rates.*—No rating method, schedule, classification, underwriting rule, bylaw, or regulation shall become effective or be applied by the Rating Bureau until it shall have been first submitted to and approved by the Commissioner. Provided, that a rate or premium used or charged in accordance with a schedule, classification, or rating method or underwriting rule or bylaw or regulation previously approved by the Commissioner need not be specifically approved by the Commissioner. Every rating method, schedule, classification, underwriting rule, bylaw or regulation submitted to the Commissioner for approval shall be deemed approved, if not disapproved by him in writing within 60 days after submission."

The holding of public hearings on rate filings is controlled primarily by G.S. 58-27.2(a) and the rules and regulations made by the Insurance Advisory Board pursuant to the authority granted by G.S. 58-27.1(c). Clearly these statutes and rules require the Commissioner of Insurance in acting upon a rate filing to hold a public hearing on such proposal after notice in accordance with the rules and regulations.

In *Comr. of Insurance v. Rating Bureau,* 29 N.C. App. 237, 224 S.E. 2d 223 (1976), the Bureau filed on 6 January 1975, for a reduction in extended coverage and windstorm insurance rates. The filing was withdrawn by the Bureau on 6 March 1975. On 11 April 1975, by letter the Commissioner notified the Bureau that pursuant to G.S. 58-131.2 the reduction of 19% plus an additional decrease of 3.4% was approved. In vacating the order, the Court stated:

"... Insofar as this statutory requirement for a public hearing may be repugnant to what the parties have in their correspondence sometimes referred to as the 'deemer provisions' of G.S. 58-131.1, the provisions of G.S. 58-27.2(a) mandating the public hearing must prevail. When two statutes are in conflict and cannot reasonably be reconciled, the statute last enacted repeals the earlier statute to the extent of the repugnancy, even absent a specific repealing clause. ... As above noted, G.S. 58-27.2(a) was enacted in 1949, while G.S. 58-131.1 was enacted in 1945. Therefore, whatever the legal effect of a 'waiver' by the Fire Insurance Rating Bureau of the 'deemer' provisions of G.S. 58-131.1 may be, it is clear that neither the Rating Bureau nor the Insurance Commissioner may lawfully dispense with the public hearing in cases in which a public hearing is mandated by G.S. 58-27.2(a) ...." 29 N.C. App. at 246, 224 S.E. 2d at 228.

[1] Although the factual situation in the case before us differs considerably from that in the case above cited, the rationale therein is applicable here. Under G.S. 58-27.2(a) a public hearing was required on the rate filing by the Rating Bureau on 27 June 1975, and this requirement prevails over any repugnant provisions of the "deemer provisions" of G.S. 58-131.1. Further, the statutory objective of fixing insurance rates which are fair for both the public and the insurance carriers must be considered in construing these statutes. Fair rates can be fixed best after a hearing on the merits rather than by waiver or default under the deemer provision. We think the legislature intended that the Commissioner have a maximum of 60 days within which to study the Bureau's filing and to determine whether the filing establishes a fair rate or there is a need for a hearing to fix fair rates; and that if the Commissioner determines the need for a hearing on the merits, it is his duty to fix in a reasonable time a hearing date after notice, and when so

fixed the deemer provisions are stayed. We, therefore, conclude that the statutes do not require that the Commissioner of Insurance, after a rate filing, give notice, conduct a hearing, and make his ruling within 60 days from the date of filing to avoid the "deemer provision"; and that if the Commissioner, within 60 days of the filing, gives notice of public hearing on the filing, the "deemer provisions" are stayed pending the hearing and his ruling.

Having ruled that the Rating Bureau did not have the authority to put into effect the 16.2% rate increase under the deemer provisions of G.S. 58-131.1, we do not pass upon the Bureau's second assignment of error that the Commissioner erred in holding that the effected rates were unfair and discriminatory.

The Rating Bureau's third and last assignment of error is as follows:

"The Commissioner erred and thereby deprived appellant and its members of their constitutional rights to a fair hearing by his conduct prior to and during the said hearing, by his arbitrary, capricious and unreasonable decisions during the conduct of the hearing and by his failure to make any effort to comply with the mandate of the governing statute G.S. 58-131.2 to determine what would be rates for the future reasonably designed to produce a fair profit." G.S. 58-131.2, in pertinent part, provides as follows:

*"Reduction or increase of rates.*—The Commissioner is hereby empowered to investigate at any time the necessity for a reduction or increase in rates. If upon such investigation it appears that the rates charged are producing a profit in excess of what is fair and reasonable, he shall order such reduction of rates as will produce a fair and reasonable profit only.

If upon such investigation it appears that the rates charged are inadequate and are not producing a profit which is fair and reasonable, he shall order such increase of rates as will produce a fair and reasonable profit.

In determining the necessity for an adjustment of rates, the Commissioner shall give consideration to all reasonable and related factors, to the conflagration and catastrophe hazard, both within and without the State, to the

past and prospective loss experience, including the loss trend at the time the investigation is being made, and in the case of fire insurance rates, to the experience of the fire insurance business during a period of not less than five years next preceding the year in which the review is made."

In a landmark decision which has been quoted and cited with approval in many subsequent decisions by the appellate courts of this State and other States, *In re Filing by Fire Ins. Rating Bureau,* 275 N.C. 15, 38, 165 S.E. 2d 207, 223 (1969), the court discussed with thoroughness and clarity the duties of the Commissioner "in fixing such rates as will produce 'a fair and reasonable profit' and no more." No useful purpose would be served in quoting further from this definitive decision.

The power to fix insurance rates which the legislature has conferred upon the Commissioner of Insurance is an awesome one, and one which carries with it a corresponding duty.

The record on appeal discloses that since he took the oath of office in early January 1973, the Commissioner has failed repeatedly to conduct hearings on numerous filings by the Rating Bureau, including a filing for reduction of rates for extended coverage and windstorm insurance. The record on appeal further discloses that the Commissioner in the hearing on the filing which is the subject of this proceeding refused, contrary to the provisions of G.S. 58-131.2, to consider competent evidence of losses and operating expenses of the insurance industry, and reasonable and related factors in making his own projections into the future. The Commissioner and the staff of the Insurance Department failed to cross-examine the witness offered by the Rating Bureau on the merits of its filing, offered no evidence to challenge the voluminous and detailed data submitted in the Bureau filing even though the data clearly indicated that the homeowners insurance rates, last increased in 1966, were so low that the insurers could engage in business only at a loss.

[2] We conclude that the order of the Commissioner of Insurance is contrary to law and the evidence, is unreasonable and arbitrary, and must be vacated.

Although the Rating Bureau had no authority to effect on 8 October 1975 the 16.2% rate increase under the deemer provision, it presented a prima facie case supporting its filing and

offered competent evidence that the rate for homeowners insurance in effect prior to that date was unfair and confiscatory. Since the record on appeal discloses persistent procrastination, unfairness, and partisan procedures and decisions on the part of the Commissioner, we, in the exercise of the inherent power of the court, do not invalidate the effected 16.2% rate increase by the Rating Bureau. We, therefore, continue in effect this rate increase until the Commissioner of Insurance performs his statutory duty in further proceedings and fixes premium rates for homeowners insurance which will produce a fair and reasonable profit and no more.

The order of the Commissioner of Insurance is hereby vacated, and this cause is remanded to the Commissioner of Insurance for further proceedings in accordance with this opinion.

Vacated.

Judge VAUGHN concurs in part.

Judge MARTIN concurs in the result.

Judge VAUGHN concurring in part:

I concur only in that part of the opinion which reverses and vacates the order of the Commissioner as being unsupported by material and substantial evidence in view of the entire record.