228 S.E.2d 264 (1976)
30 N.C. App. 549
STATE of North Carolina ex rel. COMMISSIONER OF INSURANCE
v.
NORTH CAROLINA FIRE INSURANCE RATING BUREAU.
No. 7610INS120.
Court of Appeals of North Carolina.
September 1, 1976.
Certiorari Allowed November 4, 1976.
*268 Atty. Gen. Rufus L. Edmisten by Asst. Atty. Gen. Isham B. Hudson, Jr., Raleigh, for plaintiff-appellee.
Joyner & Howison by William T. Joyner, Henry S. Manning, Jr., and James E. Tucker, Raleigh, for defendant-appellant.
Certiorari Allowed by Supreme Court November 4, 1976.
CLARK, Judge.
The Fire Insurance Rating Bureau was established in 1945. Its jurisdiction, powers and duties are defined in G.S. 58-125 through 58-131.9. Every insurance company authorized to insure against loss by fire, lightning, windstorm, etc., is required to become a member of the Bureau and to file annually its underwriting experience in the State.
We first consider the validity of the Rating Bureau's application of the deemer provision (G.S. 58-131.1) in effecting the 16.2% increase in homeowner rates as filed.
G.S. 58-131.1 provides as follows:

"Approval of rates.  No rating method, schedule, classification, underwriting rule, bylaw, or regulation shall become effective or be applied by the Rating Bureau until it shall have been first submitted to and approved by the Commissioner. Provided, that a rate or premium used or charged in accordance with a schedule, classification, or rating method or underwriting rule or bylaw or regulation previously approved by the Commissioner need not be specifically approved by the Commissioner. Every rating method, schedule, classification, underwriting rule, bylaw or regulation submitted to the Commissioner for approval shall be deemed approved, if not disapproved by him in writing within 60 days after submission."
The holding of public hearings on rate filings is controlled primarily by G.S. 58-27.2(a) and the rules and regulations made by the Insurance Advisory Board pursuant to the authority granted by G.S. 58-27.1(c). Clearly these statutes and rules require the Commissioner of Insurance in acting upon a rate filing to hold a public hearing on such proposal after notice in accordance with the rules and regulations.
In Comr. of Insurance v. Rating Bureau, 29 N.C.App. 237, 224 S.E.2d 223 (1976), the Bureau filed on 6 January 1975, for a reduction in extended coverage and windstorm insurance rates. The filing was withdrawn by the Bureau on 6 March 1975. On 11 April 1975, by letter the Commissioner notified the Bureau that pursuant to G.S. 58-131.2 the reduction of 19% plus an additional decrease of 3.4% was approved. In vacating the order, the Court stated:
". . . Insofar as this statutory requirement for a public hearing may be repugnant to what the parties have in their correspondence sometimes referred to as the `deemer provisions' of G.S. 58-131.1, the provisions of G.S. 58-27.2(a) mandating the public hearing must prevail. When two statutes are in conflict *269 and cannot reasonably be reconciled, the statute last enacted repeals the earlier statute to the extent of the repugnancy, even absent a specific repealing clause.. . . As above noted, G.S. 58-27.2(a) was enacted in 1949, while G.S. 58-131.1 was enacted in 1945. Therefore, whatever the legal effect of a `waiver' by the Fire Insurance Rating Bureau of the `deemer' provisions of G.S. 58-131.1 may be, it is clear that neither the Rating Bureau nor the Insurance Commissioner may lawfully dispense with the public hearing in cases in which a public hearing is mandated by G.S. 58-27.2(a). . ." 29 N.C.App. at 246, 224 S.E.2d at 228.
Although the factual situation in the case before us differs considerably from that in the case above cited, the rationale therein is applicable here. Under G.S. 58-27.2(a) a public hearing was required on the rate filing by the Rating Bureau on 27 June 1975, and this requirement prevails over any repugnant provisions of the "deemer provisions" of G.S. 58-131.1. Further, the statutory objective of fixing insurance rates which are fair for both the public and the insurance carriers must be considered in construing these statutes. Fair rates can be fixed best after a hearing on the merits rather than by waiver or default under the deemer provision. We think the legislature intended that the Commissioner have a maximum of 60 days within which to study the Bureau's filing and to determine whether the filing establishes a fair rate or there is a need for a hearing to fix fair rates; and that if the Commissioner determines the need for a hearing on the merits, it is his duty to fix in a reasonable time a hearing date after notice, and when so fixed the deemer provisions are stayed. We, therefore, conclude that the statutes do not require that the Commissioner of Insurance, after a rate filing, give notice, conduct a hearing, and make his ruling within 60 days from the date of filing to avoid the "deemer provision"; and that if the Commissioner, within 60 days of the filing, gives notice of public hearing on the filing, the "deemer provisions" are stayed pending the hearing and his ruling.
Having ruled that the Rating Bureau did not have the authority to put into effect the 16.2% rate increase under the deemer provisions of G.S. 58-131.1, we do not pass upon the Bureau's second assignment of error that the Commissioner erred in holding that the effected rates were unfair and discriminatory.
The Rating Bureau's third and last assignment of error is as follows:
"The Commissioner erred and thereby deprived appellant and its members of their constitutional rights to a fair hearing by his conduct prior to and during the said hearing, by his arbitrary, capricious and unreasonable decisions during the conduct of the hearing and by his failure to make any effort to comply with the mandate of the governing statute G.S. 58-131.2 to determine what would be rates for the future reasonably designed to produce a fair profit."
G.S. 58-131.2, in pertinent part, provides as follows:

"Reduction or increase of rates.  The Commissioner is hereby empowered to investigate at any time the necessity for a reduction or increase in rates. If upon such investigation it appears that the rates charged are producing a profit in excess of what is fair and reasonable, he shall order such reduction of rates as will produce a fair and reasonable profit only.
If upon such investigation it appears that the rates charged are inadequate and are not producing a profit which is fair and reasonable, he shall order such increase of rates as will produce a fair and reasonable profit.
In determining the necessity for an adjustment of rates, the Commissioner shall give consideration to all reasonable and related factors, to the conflagration and catastrophe hazard, both within and without the State, to the past and prospective loss experience, including the loss trend at the time the investigation is being made, and in the case of fire insurance rates, to the experience of the fire insurance business during a period of not less *270 than five years next preceding the year in which the review is made."
In a landmark decision which has been quoted and cited with approval in many subsequent decisions by the appellate courts of this State and other States, In re Filing by Fire Ins. Rating Bureau, 275 N.C. 15, 38, 165 S.E.2d 207, 223 (1969), the court discussed with thoroughness and clarity the duties of the Commissioner "in fixing such rates as will produce `a fair and reasonable profit' and no more." No useful purpose would be served in quoting further from this definitive decision.
The power to fix insurance rates which the legislature has conferred upon the Commissioner of Insurance is an awesome one, and one which carries with it a corresponding duty.
The record on appeal discloses that since he took the oath of office in early January 1973, the Commissioner has failed repeatedly to conduct hearings on numerous filings by the Rating Bureau, including a filing for reduction of rates for extended coverage and windstorm insurance. The record on appeal further discloses that the Commissioner in the hearing on the filing which is the subject of this proceeding refused, contrary to the provisions of G.S. 58-131.2, to consider competent evidence of losses and operating expenses of the insurance industry, and reasonable and related factors in making his own projections into the future. The Commissioner and the staff of the Insurance Department failed to cross-examine the witness offered by the Rating Bureau on the merits of its filing, offered no evidence to challenge the voluminous and detailed data submitted in the Bureau filing even though the data clearly indicated that the homeowners insurance rates, last increased in 1966, were so low that the insurers could engage in business only at a loss.
We conclude that the order of the Commissioner of Insurance is contrary to law and the evidence, is unreasonable and arbitrary, and must be vacated.
Although the Rating Bureau had no authority to effect on 8 October 1975 the 16.2% rate increase under the deemer provision, it presented a prima facie case supporting its filing and offered competent evidence that the rate for homeowners insurance in effect prior to that date was unfair and confiscatory. Since the record on appeal discloses persistent procrastination, unfairness, and partisan procedures and decisions on the part of the Commissioner, we, in the exercise of the inherent power of the court, do not invalidate the effected 16.2% rate increase by the Rating Bureau. We, therefore, continue in effect this rate increase until the Commissioner of Insurance performs his statutory duty in further proceedings and fixes premium rates for homeowners insurance which will produce a fair and reasonable profit and no more.
The order of the Commissioner of Insurance is hereby vacated, and this cause is remanded to the Commissioner of Insurance for further proceedings in accordance with this opinion.
Vacated.
VAUGHN, J., concurs in part.
MARTIN, J., concurs in the result.
VAUGHN, Judge (concurring in part):
I concur only in that part of the opinion which reverses and vacates the order of the Commissioner as being unsupported by material and substantial evidence in view of the entire record.