STATE OF NORTH CAROLINA, EX REL. COMMISSIONER OF INSURANCE v. NORTH CAROLINA RATE BUREAU

No. 8010INS953

(Filed 19 May 1981)

Insurance § 116— fire and extended coverage rates—withdrawal of filing —voidness of order entered by Commissioner of Insurance

The N. C. Rate Bureau could withdraw a voluntary filing for dwelling fire and extended coverage rates after the Commissioner of Insurance had set the filing for a public hearing, and an order entered by the Commissioner of Insurance after such withdrawal disapproving the fire insurance filing and approving a decrease in extended coverage rates was null and void. Furthermore, the Commissioner of Insurance was estopped from claiming that the filing could not be withdrawn by a press release he issued on the same date the filing was withdrawn, and the Commissioner's order was also void because it was rendered without the hearing on the filing required by G.S. 58-124.21(a).

APPEAL by respondent, the North Carolina Rate Bureau, from an order issued by the Commissioner of Insurance on 20 June 1980. Heard in the Court of Appeals 8 April 1981.

On 24 March 1980, the North Carolina Rate Bureau (hereinafter the Rate Bureau), which was created pursuant to the provisions of G.S. 58-124.17 *et seq.* (Cum. Supp. 1979), filed with the North Carolina Commissioner of Insurance (hereinafter the Commissioner) proposed revisions in dwelling fire and extended coverage insurance rates. In its "filing"[1] the Rate Bureau set forth its need for an average statewide rate-level increase of 18.1% for fire coverage and an average statewide rate-level decrease of 18.5% for extended coverage. The cover letter pointed out, however, that "[i]n accordance with G.S. 58-124.26 the increase in the overall level of rates in this filing has been limited to 6% over the general rate level in effect as of the effective date of G.S. 58-124.26, as amended." The Rate Bureau, therefore, filed for a 10.6% increase in fire rates and a 6.5% decrease in extended coverage rates.[2] The data used to develop rate level indications were for five years ending December 31, 1977 for fire and for ten years ending December 31, 1977 for extended coverage.

On 23 April 1980, the Commissioner filed a notice of a public hearing to be held on 10 June 1980. In his notice, the Commissioner, pursuant to G.S. 58-124.21, contended that the Rate Bureau's filing failed to comply with the requirements of Article 12B of Chapter 58 of the General Statutes (G.S. 58-124.17 *et seq.*), and he requested further information and breakdown of data. In paragraph (5), the Commissioner stated:

> The filing does not indicate whether the experience upon which this filing is based has been audited. The accuracy of

1. The "filing" consisted of the 24 March 1980 cover letter, memoranda, and supporting exhibits.

2. We note that (1) an extended coverage policy can only be purchased as an optional addition to a dwelling fire insurance policy; (2) approximately 95% of all insureds who purchase dwelling fire insurance also purchase extended coverage insurance; (3) extended coverage changes are allocated by territory; and (4) the statewide rate-level change sought in the filing was an *average* change. The Rate Bureau argues that its computations "supported an overall increase in dwelling fire and extended coverage rates of 8.3%." The existence of the statutory cap set forth in G.S. 58-124.26 "necessitated the allocation of the rate indications to arrive at the 6% figure, and, accordingly, the filing sought a 10.6% [not 18.1%] increase in the fire portion and a 6.5% [not 18.5%] decrease in the extended coverage portion." As noted by the Commissioner "there was no explanation in the filing for the discrepancy between the 'need' and the 'change contained in the material' (and the only explanation we can think of is an attempt by the Bureau to combine the fire and extended coverage results so that the 6% statutory . . . cap on rates would not be applied separately) . . . ."

unaudited data cannot be assumed. You are hereby directed
to furnish verification as to whether the experience upon
which this filing is based was audited by independent
auditors. . . .

In response to the Commissioner's notice of hearing, the Rate
Bureau sent a letter furnishing the information requested by the
Commissioner. The Rate Bureau stated that the aggregate ex-
perience of the filing had not been audited by independent
auditors.

On 6 June 1980, the Rate Bureau sent the Commissioner a
short letter withdrawing the filing of 24 March[3] and indicating
that a new filing containing 1978 data would be made at an early
date. On that same day, the following press release issued from
the Commissioner's office:

News from:
Insurance Commissioner's Office, Raleigh, N.C. 27611
Contact: Oscar S. Smith, Jr.                      June 6, 1980
Media News Line (919) 733-5424

THE NORTH CAROLINA RATE BUREAU BACKS OFF
REQUEST FOR FIRE AND EXTENDED COVERAGE INCREASE

RALEIGH, N.C. . . . . The North Carolina Rate Bureau has
backed off a filing that would increase Fire and Extend-
ed coverage in North Carolina.

State Insurance Commissioner John Ingram told
reporters Friday that one of the main reasons for with-
drawing the filing was the ability of the Insurance Com-
missioner's Office to obtain a Fellow from the Casualty
Actuarial Society to serve as an expert consultant for
the North Carolina Insurance Commissioner's Office. In-
gram received approval for $90,000.00 to secure the serv-
ices of the expert consultant by transferring unused
salary funds from his 1979-80 budget to the coming fiscal
year. Ingram said he obtained the services of Doctor
Phillip Stern, a Fellow in the Casualty Actuarial Society,
to assist in the Rate Hearing that was scheduled to
begin on Tuesday (the 10th) of next week.

---

3. The 24 March 1980 filing was voluntary. Unlike the procedure set forth in
G.S. 58-124.20(d) with respect to motor vehicle liability insurance, there is *no re-
quirement* that the Rate Bureau make an annual filing for dwelling fire and extend-
ed coverage insurance.

Ingram said Stern gave the Insurance Commissioner's Office "certain questions to ask insurance companies through the Rate Bureau". Ingram says when they received the questions and found out that Stern would be a witness in the Hearing on Tuesday they backed off and withdrew the filing.

Ingram says the withdrawal will save the people of North Carolina $1,500,000.00, an increase that in all probability would have been put into effect regardless of the Commissioner's decision on the Hearing. Ingram says with the use of the Actuary there could have been additional savings had the Hearing proceeded because a rate reduction was indicated.

\* \* \*

On 10 June 1980, the date originally set for the public hearing, neither the representatives of the Rate Bureau nor representatives of the Commissioner appeared at the time and place set for the hearing. No evidence was presented. Nevertheless, on 20 June 1980, the Commissioner issued an order in which he made the following findings of fact and conclusions of law:

FINDINGS OF FACT

1. That the North Carolina Rate Bureau made a filing for revised rates for Dwelling Fire and Extended Coverage.

2. That said filing proposed an indicated need for an 18.1% increase for fire and an average statewide rate level decrease of 18.5% for Extended Coverage.

3. That said filing is subject to a 6% rate increase cap pursuant to North Carolina General Statute 58-124.26.

4. That the North Carolina Rate Bureau was served with a Notice of Public Hearing dated April 23, 1980, which scheduled a hearing for June 10, 1980.

\* \* \*

9. That the staff of the Department of Insurance has expended significant time and energy in preparing for this matter.

10. That the Commissioner of Insurance has expended significant time and energy in securing the services of an ac-

tuary to review the captioned filing, including a trip to Wilmington, Delaware to interview Dr. Phillip Stern.

11. That the Commissioner of Insurance contracted for the services of Dr. Phillip Stern to review the captioned filing and appear as an expert witness.

12. That the North Carolina Rate Bureau was provided with the names of the individuals who would appear on behalf of the Department, including the name of Dr. Phillip Stern, in response to the North Carolina Rate Bureau's request for a witness list dated May 30, 1980.

13. That by letter dated June 6, 1980 the North Carolina Rate Bureau stated it was withdrawing the above captioned filing.

14. That the withdrawal of the filing was subsequent to the setting of the captioned matter for public hearing.

15. That the North Carolina Rate Bureau did not appear at the June 10, 1980 hearing and no evidence was presented.

16. That by letter dated May 20, 1980 the North Carolina Rate Bureau stated that the filing was not audited.

17. That the filing as it relates to the fire coverage is not credible because it is based on unaudited information and it should be disapproved and permission to withdraw the filing as it relates to the fire coverage should be allowed.

18. That unaudited data or financial information which is the basis for the rate calculations in this filing is not reliable as a basis for making rate projections.

19. That by requesting the 18.5% reduction in extended coverage contained in the Rate Bureau filing of March 24, 1980, the Rate Bureau is estopped to claim that such 18.5% decrease will produce rates that are inadequate, and such 18.5% decrease in extended coverage should be approved as more reasonable, less excessive and less unfairly discriminatory than the present rates.

CONCLUSIONS OF LAW

1. That in accordance with *State of North Carolina, ex rel. Commissioner of Insurance v. North Carolina Fire In-*

*surance Rating Bureau*, 29 N.C. App. 237 a filing cannot be withdrawn after the setting of a public hearing without the permission of the Commissioner of Insurance.

2. That permission to withdraw a filing after the setting of a public hearing is within the discretion of the Commissioner of Insurance.

3. That the North Carolina Rate Bureau did not appear at the June 10, 1980 hearing and no evidence was presented.

4. That by failing to appear the North Carolina Rate Bureau waived its right to be heard.

5. That the Rate Bureau has failed to carry its burden of proof and satisfy the Commissioner that the requested increase for the fire coverage is adequate, not excessive and is not unfairly discriminatory.

6. That by requesting an 18.5% reduction in extended coverage contained in the Rate Bureau filing of March 24, 1980, the Rate Bureau is estopped to claim that such 18.5% decrease will produce rates that are inadequate and such 18.5% decrease in extended coverage should be approved as more reasonable, less excessive and less unfairly discriminatory than the present rates.

7. That the filing as it relates to the fire coverage is not credible because it is based on unaudited information and should be disapproved and permission to withdraw the filing as it relates to the fire coverage be allowed.

8. That unaudited data or financial information which is the basis for the rate calculations in the filing is not reliable as a basis for making rate projections.

Based on these findings of fact and conclusions of law, the Commissioner *disapproved* the fire insurance filing and *approved* an 18.5% decrease in extended coverage. To each and every finding of fact, conclusion of law, and order, the Rate Bureau excepted. Thereafter, on 11 July 1980, the Rate Bureau filed with the Commissioner a Motion to Vacate his 20 June Order. The record is silent as to the Commissioner's ruling, if there was a ruling, on that motion. On 18 July 1980, the Rate Bureau filed notice of appeal to this Court.

*Attorney General Edmisten, by Special Deputy Attorney General Isham B. Hudson, Jr., for the Commissioner of Insurance.*

*Young, Moore, Henderson & Alvis, by William M. Trott and Dan J. McLamb, for the North Carolina Rate Bureau, Appellants.*

BECTON, Judge.

Article 12B of Chapter 58 of the North Carolina General Statutes is the enabling legislation for the North Carolina Rate Bureau which was designed to assume the rate-making functions formerly performed by the North Carolina Rating Bureau, the North Carolina Automobile Rate Administrative Office and the Compensation Rating and Inspection Bureau of North Carolina. G.S. 58-124.17. Under G.S. 58-124.20, the Rate Bureau must file with the Commissioner copies of the rates, classification plans, rating plans and systems used by member insurance companies. Each filing becomes effective as of the date specified in the filing, but no earlier than ninety days from the date the Commissioner receives the filing. G.S. 58-124.21 gives the Commissioner discretionary authority to give the Rate Bureau written notice, within thirty days of a filing, that such filing does not comply with the requirements of Article 12B and that a date not less than thirty days from the mailing of such notice has been set for a public hearing on the filing.

Article 12B is silent on the questions of how and when a filing might be withdrawn by the Rate Bureau. In *Comr. of Insurance v. Rating Bureau,* 29 N.C. App. 237, 224 S.E. 2d 223, *affirmed,* 291 N.C. 55, 229 S.E. 2d 268 (1976), the North Carolina appellate courts agreed that a rating bureau (in that case, the North Carolina Fire Insurance Rating Bureau) could withdraw a filing if it did so before the Commissioner took any action on the filing and before the filing could go into effect pursuant to G.S. 58-131.1.[4] Both this court and the Supreme Court held open the question of whether a rating bureau could withdraw a filing after the Commissioner had set the filing for a public hearing. That issue now confronts us.

---

4. G.S. 58-131.1, the so-called "deemer" provision, has been replaced by G.S. 58-124.21(b) by which a filing is "deemed to be approved" if no notice of hearing is issued within thirty days from the date of the filing.

We hold that it was proper for the Rating Bureau to withdraw its voluntary filing in this case.[5] In reaching this conclusion, we have been guided by the reasoning found in the following words of the Supreme Court decision in *Comr. of Insurance v. Rating Bureau:*

> We have heretofore said that when the Bureau makes a filing in which it proposes an increase in the premium rates, "unquestionably, the Bureau may amend its filing so as to propose a smaller increase in premium rates than that proposed in the original filing." [Citation omitted.] We find no merit in the contention of the Commissioner that once a filing is made the Bureau cannot withdraw it, but it remains before the Commissioner for his approval, disapproval or modification.

> If a filing, once made, could never be withdrawn, it would follow that if the Bureau made a filing proposing a substantial increase in the premium rates which the Commissioner, with or without justification, failed to disapprove within 60 days after its submission, such increase would go into effect, at least temporarily, pursuant to the "deemer" provision of G.S. 58-131.1, even though the Bureau were to find that its calculations were in error and no increase was justified and were to advise the Commissioner of such an error and of its desire to withdraw the proposal. It can hardly be supposed that the Legislature, by the enactment of Article 13 of Chapter 58 of the General Statutes, creating the Bureau, so intended. Nothing in the statute relating to filings by the Bureau supports the contention that a filing, once made, cannot be withdrawn for any reason satisfactory to the Bureau. In this respect, there is no basis for making a distinction between a filing which proposes an increase in the premium rate and a filing which proposes a decrease in such rate. We, therefore, hold that the Court of Appeals was correct in its determination that the Bureau was acting within its rights in withdrawing this filing . . . .

291 N.C. at 66, 229 S.E. 2d at 274. This analysis applies with equal force to the situation before us. We find no compelling

---

5. There is no suggestion in the Record before us that the Commissioner has been bombarded with a series of filings and last-minute withdrawals which might naturally tie the Commissioner's hands. We save for another day our judgment on the propriety of a well-calculated withdrawal by the Rate Bureau to gain a tactical advantage over the Commissioner.

reason to conclude that a voluntary filing may not be withdrawn. The Commissioner's argument that allowing withdrawals will thwart the intent of Chapter 12B to avoid delays in the rate-making process is not persuasive. Withdrawals of filings for rate increases will delay the effective dates of such increases and will, it seems logical to assume, be avoided by the Rate Bureau. Furthermore, the references in the Commissioner's Order to expenditure of time and energy by Commission staff is also unpersuasive. The withdrawal of the filing reduced the amount of work necessitated by the filing. Much of the preparation for the 10 June hearing should prove beneficial if, and when, the Rate Bureau resubmits a filing. Moreover, the Commissioner performs his service ably and well and saves the State money when he prevails at a hearing or forces the Rate Bureau to withdraw or amend its filing prior to a hearing.

Since the Rate Bureau withdrew its filing, the matter was concluded. There was, therefore, no proposal before the Commissioner for a change in fire and extended coverage rates. The order appealed from was null and void and is vacated.

For two additional reasons, the order appealed from must be vacated. First, the Commissioner was, by virtue of his press release of 6 June 1980, estopped from claiming that the filing could not be withdrawn. We read the last paragraph of that press release, containing the phrases "the withdrawal will save the people . . ." and "had the Hearing proceeded," as clear indications that the Commissioner acquiesced in the withdrawal of the filing and in cancellation of the hearing. We are not here implying that the Commissioner intentionally or fraudulently misled the Rate Bureau by his press release. It is not necessary to show bad faith, fraud, or intent to deceive before the doctrine of equitable estoppel can be applied. *Watkins v. Central Motor Lines, Inc.,* 279 N.C. 132, 181 S.E. 2d 588 (1971).

> [A] party may be estopped to deny representations made when he had no knowledge of their falsity, or which he made without any intent to deceive the party now setting up the estoppel. . . . [T]he fraud consists in the inconsistent position subsequently taken, rather than in the original conduct. It is the subsequent inconsistent position, and not the original conduct that operates to the injury of the other party.

*Hamilton v. Hamilton,* 296 N.C. 574, 576-77, 251 S.E. 2d 441, 443 (1979), *quoting* H. McClintock, Equity § 31 (2d ed. 1948).

At no point in the case before us did the Commissioner indicate to the Rate Bureau that the withdrawal of its filing was unacceptable. Indeed, the record shows that at the time and place set for the hearing, neither the Commissioner nor the Rate Bureau sent representatives. No evidence was presented. The 20 June 1980 filing of an order in this matter was entirely inconsistent with the Commissioner's earlier position. He was, therefore, estopped from issuing an order in this matter.

Finally, the Commissioner's Order is void because it was rendered in the absence of a hearing on the filing. G.S. 58-124.21(a) states, in part, that at the hearing set by the Commissioner, evidence as to factors pertinent to the proposed rate *shall* be considered. "If the Commissioner *after hearing* finds that the filing does not comply with the provisions of this Article, he may issue his order . . . ." (Emphasis added.)

We find it unnecessary to address the obvious question of the due process rights of the member companies of the Rate Bureau. The statutes referred to above make adequate provisions for protecting their due process rights to notice and hearing. "It is only necessary that the Commissioner comply with the mandates of the statutes." *Comr. of Insurance v. Rating Bureau*, 29 N.C. App. at 248, 224 S.E. 2d at 229. Here, the Commissioner entered an order even though there had been no hearing.

The order appealed from is, therefore,

Vacated.

Judge MARTIN (Robert M.) and Judge WHICHARD concur.