FRYE REGIONAL MEDICAL CENTER, INC., PLAINTIFF v. JAMES B. HUNT, JR., H. DAVID BRUTON, M.D., SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, AND NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, DEFENDANTS, AND CATAWBA MEMORIAL HOSPITAL, INTERVENOR-DEFENDANT

No. 613PA97

(Filed 5 February 1999)

**Hospitals— State Medical Facilities Plan—amendment by Governor**

The Governor's power to "approve" the State Medical Facilities Plan (SMFP) is not limited to acceptance or rejection of the SMFP submitted by the Department of Human Resources and the State Health Coordinating Council but includes the power to make substantive amendments to the plan. Therefore, the Governor had the power to amend the open-heart surgery needs determination in the 1997 SMFP. N.C.G.S. §§ 131E-176(25), 131E-177.

Justices MARTIN and WAINWRIGHT did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 prior to determination by the Court of Appeals of an order for preliminary injunction entered by Manning J., on 5 September 1997 in Superior Court, Wake County. Heard in the Supreme Court 1 October 1998.

*Bode, Call & Stroupe, L.L.P., by Robert V. Bode and Diana E. Ricketts, for plaintiff-appellee.*

*Michael F. Easley, Attorney General, by James A. Wellons, Special Deputy Attorney General, for defendant-appellants; and Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by James T. Williams, Jr., and Jim W. Phillips, Jr., for intervenor-defendant-appellant.*

FRYE, Justice.

The controlling question in this case is whether the Governor's power to approve the State Medical Facilities Plan (SMFP) includes the power to make substantive amendments to it. For the reasons stated in this opinion, we conclude that the Governor does have such authority. Accordingly, we must reverse the superior court's decision to the contrary.

The controversy arises out of the attempts by Catawba Memorial Hospital, located in Hickory, to start an open-heart surgery program. These efforts were opposed by Frye Regional Medical Center, Inc., which had already applied for and received a Certificate of Need (CON) to initiate an open-heart surgery program at its hospital in Hickory. After several years of legal proceedings between the two hospitals, the Department of Human Resources (Department), and others, the State Health Coordinating Council (Council) recommended, and the SMFP contained findings, that there was no need for any new open-heart surgery programs in 1997. On 16 September 1996, the 1997 SMFP was submitted to the Governor for his approval. On 26 November 1996, the Governor approved the 1997 recommended SMFP after amending it to provide additional nursing beds for several counties.

The 1997 SMFP was presented to the Rules Review Commission for approval as a permanent rule. The Rules Review Commission objected, and in response to the objections, the Department and the Council recommended additional amendments to the Governor. These amendments modified the open-heart surgery and other cardiac-need determinations in the plan. On 23 July 1997, the Governor approved the recommended amendments, except for the amendment to the open-heart need determination. The Governor's memorandum included the following:

> I concur with and approve all the proposed amendments with one exception. I do not approve the amendment to the need determination for open heart surgery services as proposed by the Council. Instead, I direct that the need determination be amended to reflect a need for open heart surgery services from any hospital which acquired a heart-lung bypass machine prior to March 18, 1993 and which, nevertheless, is unable to use such a machine in the provision of open heart surgery services because the hospital does not have a certificate of need authorizing it to provide them. I find that it is in the best interest of our citizens if

valuable assets be used and not remain idle. I also believe that we should provide care close to home whenever we can.

Your Department has informed me that this situation exists only in the Catawba County area. Catawba County is located in the Hickory-Morganton MSA, which is the fourth largest MSA in the State. However, the three larger MSAs have two to four times the number of heart-lung bypass machines available for the provision of open heart surgery services per 100,000-person population. In addition, Catawba County is located in HSA I. HSA I is the only HSA (other than HSA VI) which has only two facilities located within it which provide open heart surgery services. In light of all of the foregoing, I find that the citizens residing in the Catawba County area have a need for such additional open heart surgery services.

On 22 August 1997, Frye Regional instituted the present action challenging the Governor's authority to amend the SMFP. On 5 September 1997, the superior court granted Frye Regional's motion for a preliminary injunction, suspending the 23 July 1997 amendment to the 1997 SMFP and reinstating the provisions of the pre-existing 1997 SMFP. Judge Manning certified the order for immediate appeal.

Defendants and Catawba Memorial Hospital gave notice of appeal, and on 5 March 1998, this Court allowed defendants' and Catawba's petition for discretionary review of the following question prior to determination by the Court of Appeals:

Does the Governor of North Carolina, as Chief Executive of the State and head of the Executive Branch of State Government, have the power and authority, under the North Carolina General Statutes and the North Carolina Constitution, to make and execute policy decisions in the area of health care facilities' needs, including the power to amend the State's annual SMFP, a draft of which is prepared for him by the SHCC and presented to him by the Secretary of the Department of Human Resources?

In the preliminary injunction order, the judge explained: "The sole basis of my determination is my conclusion that the Governor has no authority, as a matter of law, to amend the SMFP. I specifically do not reach the other factual and legal issues raised by the parties." Thus, the narrow issue before us is the correctness of the superior court's conclusion.

In the preliminary injunction order, the judge explained his conclusion as follows:

I specifically conclude as a matter of law that the Governor of the State of North Carolina has no authority to amend the SMFP. Under the law,

"State Medical Facilities Plan" means the plan prepared by the Department of Human Resources and the North Carolina State Health Coordinating Council, and approved by the Governor.

G.S. 131E-176(25)[(1997)].

"North Carolina State Health Coordinating Council" means the Council that prepares, with the Department of Human Resources, the State Medical Facilities Plan.

G.S. 131E-176(17).

In the section outlining the Department's specific powers and duties, the Department is empowered to:

develop policy, criteria, and standards for health facilities planning; conduct statewide registration and inventories of and make determinations of need for health service facilities, health services as specified in G.S. 131E-176(16)f., and equipment as specified in G.S. 131E-176(16)f1., which shall include consideration of adequate geographic location of equipment and services; *and develop a State Medical Facilities Plan.* G.S. 131E-177(4).

G.S. 131E-177(4)[(1997)].

The statute further provides that:

The Secretary of the Department of Human Resources shall have final decision-making authority with respect to all functions described in this section [G.S. 131E-177].

G.S. 131E-177.

Read *in pari materia*, these sections contemplate that the SMFP is to be prepared by the SHCC acting with the Department, and then approved by the Governor. The Governor may approve or disapprove the SMFP as submitted by the SHCC and the Department but may not unilaterally develop *or amend it.*

*The power is similar to that exercised by him in review-ing legislation*: he can approve or veto, but he cannot rewrite the bill.

For the same reasons noted above, it is also clear that *the Governor does not have the power to amend the open heart review schedules in 1997, because the SHCC did not prepare and develop any such amendments*.

The entire statutory and regulatory process for health plan-ning in North Carolina contemplates that the SMFP shall be developed by the SHCC and the Department in an orderly and logical fashion, with numerous checks and balances along the way. *The Governor's sole function in that process is to accept or reject the SMFP as submitted to him. The Governor's amendment of the SMFP in this case com-pletely circumvents that process. Because the authority to develop, prepare or amend the SMFP is solely vested by statute in the SHCC and the Department, the Governor has no authority to amend the SMFP.*

(Emphasis added.)

We do not agree with the above-emphasized portions of the pre-liminary injunction order. We specifically reject analogizing the Governor's power to amend the State Medical Facilities Plan to the Governor's authority under the Constitution to veto legislation enacted by the General Assembly. Furthermore, as explained below, the statutes give the Council and the Department specific authority to develop or prepare the SMFP, without specific reference to amending it. *See* N.C.G.S. §§ 131E-176(17), (25), 131E-177(4). We conclude that the Governor's power to amend in this case facilitates his role in bringing closure to the statutory and regulatory process and does not suggest a circumvention of the process.

Plaintiff argues that under N.C.G.S. § 131E-177, the final decision-making power rests with the head of the Department of Human Resources. While the Secretary of the Department does have the final decision-making power with regard to all functions under N.C.G.S. § 131E-177, the Secretary's powers are separate and distinct from those of the Governor. While the Secretary must develop or pre-pare the SMFP to effectuate the legislative purpose, the Governor must, as a part of the approval process, ensure that the SMFP com-ports with the general health policies and goals of the state. To this

end, the Governor has the authority to make substantive changes by amending the SMFP to ensure that its provisions are properly executed under the statutes. If the provisions of the SMFP, after review, are approved by the Rules Review Commission, they will become permanent rules. N.C.G.S. § 150B-21.3 (1995).

The Department of Human Resources is a department of the Executive Branch of state government, with its Secretary reporting directly to the Governor as chief executive officer of the state. Although there is statutory recognition of the State Health Coordinating Council, it is essentially an advisory body created by executive order. Exec. Order No. 43 (1994). The Governor appoints its twenty-seven members, designates its chair and vice chair, and sets out its duties and responsibilities. *Id.* at §§ 2, 3, 7. Under the statutes, the role of the Council and the Department is to "prepare" or "develop" the SMFP. N.C.G.S. §§ 131E-176(25), 131E-177(4). The Governor's role is to "approve" the SMFP. N.C.G.S. § 131E-176(25). Read in context, these statutes suggest that the Governor's role is to make the final decision concerning the SMFP's contents after it has been developed and prepared by the Department and the Council.

The need for such authority is clearly shown in this case. On at least two occasions, the Rules Review Commission objected to specific provisions of the 1997 SMFP relating to the need determinations for open-heart surgery services. Although the Governor had previously approved the 1997 SMFP after amending it, it could not become effective over the objections of the Rules Review Commission. The Council and the Department proposed additional amendments, most of which, but not all, met the Governor's approval.

In this context, the Governor's power to approve carries little meaning without the power to modify or amend as a part of the approval process. We reject plaintiff's contention that the Governor's power to approve is purely ministerial. Such a view is inconsistent with the statutory scheme and the executive powers of the Governor.

The operative statute provides as follows:

"State Medical Facilities Plan" means the plan prepared by the Department of Health and Human Services and the North Carolina State Health Coordinating Council, and approved by the Governor.

N.C.G.S. § 131E-176(25).

In interpreting a statute, we first look to the plain meaning of the statute. Where the language of a statute is clear, the courts must give the statute its plain meaning; however, where the statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent. *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 388 S.E.2d 134 (1990). However, " 'where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded.' " *Mazda Motors of Am., Inc. v. Southwestern Motors, Inc.*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979) (quoting *State v. Barksdale*, 181 N.C. 621, 625, 107 S.E. 505, 507 (1921)). The interpretation of a statute given by the agency charged with carrying it out is entitled to great weight. *See High Rock Lake Ass'n v. N.C. Envtl. Mgmt. Comm'n*, 51 N.C. App. 275, 279, 276 S.E.2d 472, 475 (1981).

With these principles of construction in mind, we must determine the meaning of the word "approved" as used in N.C.G.S. § 131E-176(25). The meaning is not clear from the literal language of the statute. To "approve," as defined by *Black's Law Dictionary*, means "[t]o be satisfied with; to confirm, ratify, sanction, or consent to some act or thing done by another." *Black's Law Dictionary* 102 (6th ed. 1990). Plaintiff argues that the Governor is limited by such a definition in making an approval and that the power to modify is not included. The Department of Human Resourses, as the agency charged with implementing the SMFP, interprets the word "approved" more broadly, asserting that the Governor did have the authority to amend the SMFP in the instant case.

We note that the Governor has amended State Medical Facilities Plans in the past. While both parties acknowledge that the present and former governors have amended SMFPs, plaintiff contends that such amendments have occurred only in very limited circumstances because of a judicial decree, error, change in appropriations, or change in inventories, and that the present amendment goes beyond that exercised by previous Governors. Plaintiff further argues that the SMFP itself provides that it may be changed post-approval only under these limited circumstances. However, in the instant case, we note that the Governor had given previous approval to the 1997 SMFP only after amending it. We also note that the present amendment by the Governor came only after the Council and the Secretary had recommended additional amendments in response to a refusal by the

legislatively established Rules Review Commission to approve the former plan. Thus, the amendments here also occurred in very limited circumstances.

Moreover, while the legislature has amended various related statutes on many occasions, it has in no way limited the Governor's ability to amend the SMFP. *See* Act of July 15, 1983, ch. 775, sec. 1, 1983 N.C. Sess. Laws 896, 896 (recodifying the public-hospital laws in portions of the General Statutes); Act of June 27, 1984, ch. 1000, 1984 N.C. Sess. Laws 95 (making final agency decisions on CONs appealable to the North Carolina Court of Appeals; Act of June 27, 1984, ch. 1001, 1984 N.C. Sess. Laws 95 (ending the moratorium on nursing-home construction); Act of June 27, 1984, ch. 1002, 1984 N.C. Sess. Laws 95 (making technical and clarifying changes to the CON law); Act of June 30, 1987, ch. 511, 1987 N.C. Sess. Laws 795 (amending CON law); Act of July 15, 1991, ch. 692, 1991 N.C. Sess. Laws 2215 (making technical and clarifying amendments to the CON statutes); Act of March 18, 1993, ch. 7, 1993 N.C. Sess. Laws 5 (modifying the CON law). While this legislative inaction is not conclusive, at best, it does not support a prohibition on the Governor's power to make substantive amendments. Finally, an interpretation of the word "approved" as including the power to modify is not unprecedented. *See, e.g., State ex rel. Comm'r of Ins. v. N.C. Auto. Rate Admin. Office,* 293 N.C. 365, 385-87, 239 S.E.2d 48, 61-62 (1977) (concluding that Commissioner may alter plan following approval in part of a proposed plan); *State ex rel. Comm'r of Ins. v. N.C. Fire Ins. Rating Bureau,* 291 N.C. 55, 65, 229 S.E.2d 268, 274 (1976) (concluding that Commissioner need not approve or disapprove in full but may allow part of a proposed increase or decrease); *In re N.C. Fire Ins. Rating Bureau,* 275 N.C. 15, 40, 165 S.E.2d 207, 224 (1969) (rejecting position that Commissioner must approve or disapprove filing in its entirety; rather, Commissioner may modify proposal to allow part of proposed increase).

In the instant case, there are no statutorily prescribed methods for the Governor to exercise the power of approval of the proposal. In the absence of statutorily detailed limits on the Governor's power to approve, we cannot conclude that his means of approval may be constrained only to acceptance or rejection of the plan in total. One can easily envision a situation where the Governor disapproves a part of the SMFP and continuously sends it back to the Council, and the Council continuously makes amendments that the Governor disapproves, resulting in either no State Medical Facilities Plan or a com-

plete stalemate. We believe the better interpretation of the statute is that the Governor has the final authority to make substantive amendments as a part of the approval process.

Based on the foregoing, we hold that the Governor's power to approve the State Medical Facilities Plan includes the power to amend it. Therefore, the order of the superior court is reversed.

REVERSED.

Justices MARTIN and WAINWRIGHT did not participate in the consideration or decision of this case.